# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

DELLA GORDEN,

       Plaintiff,

v.                                                      Case No:  2:15-cv-517-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## ORDER

Plaintiff Della Gorden seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs, and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

## I.        Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's (ALJ) finding that Plaintiff does not meet or equal Listing 12.05C; and (2) whether substantial evidence supports the ALJ's evaluation

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

of the medical expert's opinion.

## II.    Procedural History and Summary of the ALJ's Decision

On July 2009, Plaintiff applied for disability, DIB, and SSI, alleging a disability onset date of June 20, 2008.   Tr. 146, 148.   Plaintiff alleged disability due to back problems.   Tr. 170.   The applications initially were denied on August 27, 2009 and upon reconsideration on February 5, 2010.   Tr. 116-21, 126-29.   Plaintiff requested and received a hearing before ALJ Ronald S. Robins on March 15, 2011.   Tr. 82-101. At the conclusion of the hearing, the ALJ determined that Plaintiff should be sent for a mental health examination.   Tr. 100.   A supplemental hearing was then held on August 19, 2011, during which a VE testified.   Tr. 77-81.   Plaintiff appeared at both hearings, testifying only at the first hearing, and was represented by an attorney at both hearings.

On November 10, 2011, the ALJ issued a decision finding Plaintiff not disabled from June 20, 2008 through the date of the decision.   Tr. 9-18.   ALJ Robins found that Plaintiff could return to her past relevant work as a clerk or fast food restaurant worker.   Tr. 18.   Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied.   Tr. 1-6.   Plaintiff appealed the Commissioner's decision to this Court, which remanded the claim on August 18, 2014 for the Commissioner to determine whether Plaintiff meets the requirements of disability under 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C.   Tr. 736-61.

Pursuant to the Court's remand, ALJ T. Whitaker held a hearing on December 2, 2014, during which Plaintiff was represented by counsel.   Tr. 545-626.   Plaintiff,

medical expert Dr. John P. Schosheim, M.D., and VE William Weikel testified at the hearing.   Tr. 522, 546-626.   ALJ Whitaker issued an unfavorable decision on March 20, 2015.   Tr. 522-535.   The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.   Tr. 525.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since June 20, 2008, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff

> has the following severe impairments: degenerative disc disease, disc protrusion and facet arthropathy of the lumbar spine, degenerative disc disease of the cervical spine, degenerative disc disease and scoliosis of the thoracic spine, lumbalgia with thoracolumbar myofascial pain syndrome, history of fall and closed head injury, cephalgia/headache chronic tension type, chronic pain syndrome, obesity, left hand comminuted fracture base of the 5th metacarpal and proximal fifth metacarpal, borderline intellectual functioning, mood disorder secondary to chronic pain, depression, and anxiety/depression syndrome. . .

Tr. 525.   At step three, the ALJ concluded that Plaintiff's "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."   Tr. 526.   After consideration of the entire record, the ALJ determined Plaintiff had the RFC to perform a range of light[2] work as defined in 20 CFR 404.1567(b) and

---

[2] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

416.967(b).   Further,

> [Plaintiff] can lift, push, pull, and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can sit for 6 hours in an 8-hour workday. [Plaintiff] can stand and walk, in combination, 6 hours in an 8-hour workday. [Plaintiff] is limited to work that allows [her] to sit and stand alternatively provided that, at one time, [she] can sit for 30 minutes, stand for 30 minutes, and walk for 30 minutes. [Plaintiff] can never climb ladders, ropes, and scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. [Plaintiff] can perform occasional overhead reaching. [Plaintiff] can frequently handle, finger, and feel with the non-dominant left upper extremity. [Plaintiff] is limited to a work environment with only occasional exposure to cold and vibration. [Plaintiff] should have no exposure to unprotected heights and dangerous machinery. [Plaintiff] is limited to simple, routine, and repetitive tasks with "simple" defined as unskilled tasks. [Plaintiff] is limited to a work environment free of fast-paced production requirements. [Plaintiff] should have no production rate or pace work. [Plaintiff] is limited to work involving only simple work related decisions and only occasional work place changes. [Plaintiff] is limited to work with occasional interaction with the public, coworkers, and supervisors. [Plaintiff] is limited to work that allows the individual to be off task 5% of the workday in addition to regularly scheduled breaks. [Plaintiff] is limited to work that allows, on average, one unscheduled absence per month with absence defined as failing to appear for a scheduled shift, tardy for a scheduled shift, or leaving early from a scheduled shift.

Tr. 528-29.   Next, utilizing the services of a vocational expert ("VE"), the ALJ found that Plaintiff is able to perform her past relevant work as a general office clerk.   Tr. 534, 608-26.

The Appeals Council denied Plaintiff's request for review of ALJ Whitaker's decision, prompting Plaintiff to file a Complaint with this Court.   Tr. 509-14; Doc. 1. Both parties have consented to the jurisdiction of the U.S. Magistrate Judge.   Docs. 12, 13.   This matter is now ripe for review.

---

factors such as loss of fine dexterity or inability to sit for long periods of time. 20 CFR §§404.1567(b), 416.967(b)

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then

prove that he is unable to perform the jobs that the Commissioner lists.'" *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir. 2001)).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery*, 979 F.2d at 837 (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.  Discussion

### A.  Whether substantial evidence supports the ALJ's finding that Plaintiff does not meet or equal Listing 12.05C

Plaintiff argues that the ALJ's finding that Plaintiff did not meet or equal Listing 12.05C is not supported by substantial evidence. Doc. 15 at 10-14. Specifically, Plaintiff argues that she provided *prima facie* evidence that she meets Listing 12.05C but the ALJ failed to apply a presumption that her cognitive condition was the same prior to age twenty-two and then rebut the presumption to find that the Listing was not met. *Id.* at 12-13. The evidence upon which Plaintiff relies is her valid verbal IQ score of 68 and full score of 70 and the ALJ's finding that Plaintiff has multiple severe impairments. *Id.* at 11-12. Defendant responds that although Plaintiff may have an IQ of 68, she has failed to show her impairments meet all of the criteria in the diagnostic description of intellectual disability, specifically that she had deficits in adaptive functioning prior to the age of twenty-two. Doc. 22 at 5-15.

As to this issue, the Court finds that Plaintiff has not met her burden, as she is required to do.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1625(a), 416.925(a). If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing *Bowen,* 482 U.S. at 141). The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d)). The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4).

If Plaintiff contends that an impairment meets a listing, as she does here (Doc. 15 at 10-14), she bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson*, 847 F.2d at 662. In doing so, Plaintiff must have a diagnosed condition that is included in the listings. *Id.* Diagnosis of a listed impairment, however, is

not enough; as the claimant must also provide objective medical reports documenting that her impairment meets the specific criteria of the applicable listing. *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. Listing 12.05 provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added).   Accordingly, in order to meet Listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal Listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

Relevant here, as noted above, paragraph C of Listing 12.05 is met when the claimant shows: 1) "a valid verbal, performance, or full scale IQ of 60 through 70" and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Id.* at § 12.05C.   Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant satisfies two prongs: a valid I.Q. score of 60 to 70 inclusive; and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.   *Lowery*, 979 F.2d at 837.   "It is settled, however, that the presence of a more than slight or minimal limiting impairment satisfies the second criteria of section 12.05C, even if the impairment is treatable."   *Davis v. Shalala*, 985 F.2d 528, 262 n.3 (11th Cir. 1993).   Listing 12.00(D)(6)(c) mandates that "where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided

in the Weschler series, we use the *lowest* of these in conjunction with 12.05." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c) (emphasis added).

In *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), the Eleventh Circuit held that "there is a presumption that mental retardation[3] is a condition that remains constant throughout life" and would apply to a claimant since the onset date of disability. In *Hodges*, the plaintiff acknowledged the lack of IQ evidence before the age of twenty-two, but the court agreed with the plaintiff that "[IQ] tests create a rebuttable presumption of a fairly constant I.Q. throughout her life." *Id.* at 1268. The court also noted that "a claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 *and* evidence of additional mental or physical impairment." *Id.* at 1269 (emphasis added). However, "a valid [IQ] score need not be conclusive of mental retardation where the [IQ] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Id.* (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

Here, the ALJ specifically considered Listing 12.05C and determined that, although Plaintiff presented a valid verbal IQ score of 68, she failed to present evidence of deficits prior to age twenty-two.[4] Tr. 526. In reaching her conclusion, the ALJ relied on the testimony of medical expert, Dr. John P. Schosheim, M.D., a board certified psychiatrist, who opined that there was no basis to medically

---

[3] The Court notes that currently Listing 12.05 uses "Intellectual disability" in place of "Mental retardation," amended on August 1, 2013. *See* 78 Fed. Reg. 46,499, 46,501. The listing, however, has not substantively changed. *Id.*

[4] Plaintiff was thirty-eight old on her alleged onset date, June 20, 2008. Tr. 146, 148.

reasonably infer that deficits in adaptive functioning existed prior to age twenty-two based on evidence after age twenty-two. Tr. 526-28, 551, 557-58. The Court concludes that substantial evidence supports the ALJ's decision that, despite Plaintiff's IQ score, she did not meet or equal the criteria of Listing 12.05C.

During the hearing, Dr. Schosheim testified that he had the opportunity to review the medical record of evidence and he was familiar with the Listings established by the Commissioner. Tr. 551-52. Included in the evidence that Dr. Schosheim had reviewed was a psychological evaluation by Dr. Cheryl Kasprzak, Psy.D. Tr. 471-82.

Dr. Kasprzak performed Plaintiff's evaluation on April 22, 2011. Tr. 477-82. Dr. Kasprzak administered the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") (Tr. 479-81) and determined that Plaintiff's Full Scale I.Q. composite score was 70, placing her within the borderline range of intellectual functioning. Tr. 481. Plaintiff was functioning within the mild mental retardation range for verbal comprehension, with a verbal score of 68. *Id.* Plaintiff's processing speed index was 76, placing her within the borderline range of intellectual functioning. Tr. 481. Plaintiff's perceptual reasoning index was 73, also placing her within the borderline range of intellectual functioning. *Id.* Plaintiff was functioning within the below-average range of intellectual ability with a working memory index of 83. *Id.* Dr. Kasprzak determined that the results of the WAIS-IV testing were "considered valid and reliable." Tr. 482.

Dr. Kasprzak ultimately diagnosed Plaintiff with borderline intellectual functioning with a WAIS-IV full scale IQ of 70.   Tr. 481.   She also diagnosed Plaintiff with mood disorder secondary to chronic pain due to ruptured discs because she was currently depressed, did not socialize, had death wishes and experienced chronic pain.   Tr. 481-82.

Dr. Kasprzak opined that the results of the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), used to assess personality traits and psychopathology, were indicative of a "faking bad profile" and considered invalid and unreliable, reflecting severe exaggeration and malingering.   *Id.*   Based on the MMPI-2 faking bad profile, Dr. Kasprzak further noted that it was difficult to determine where else in the evaluation Plaintiff lacked integrity and exaggerated symptomology.   Tr. 482.   Dr. Kasprzak opined that Plaintiff possessed the skills and cognitive capacity to manage finances independently of others.   Tr. 482.   Plaintiff's prognosis for gainful employment was guarded.   Tr. 482.   Dr. Kasprzak also added, "[i]t is difficult to determine with any degree of certainty the impact her alleged complaints will have on her everyday functioning based on an MMPI-2 faking bad profile."   Tr. 475.

Dr. Schosheim testified that, based on his opinion, Plaintiff did not meet or equal listing 12.05C because she failed to present evidence of deficits in adaptive functioning.   Tr. 557-58.   He opined that Plaintiff's mood disorder secondary to chronic pain does not result in any functional limitations in a work environment.   Tr. 557.   Dr. Schosheim opined that Plaintiff has a mild limitation on activities of daily living.   Tr. 553.   As support for this opinion, Dr. Schosheim discussed Plaintiff's

ability to understand and carry out simple instructions, her lack of difficulties in performing her daily activities, Plaintiff's ability to arrive for Dr. Kasprzak's evaluation "without any problem," and Plaintiff's ability to "do most things that she needs to do." Tr. 559-60. He also opined that Plaintiff was only mildly limited in the area of concentration, persistence, or pace, noting that Plaintiff was able to pay attention in the examinations during her evaluation "fairly decently, but with a mild impairment." Tr. 561. He opined that Plaintiff had a moderate limitation in social functioning, as she was able to go with her sister to places and she had been out of town; however, when she is home she isolates herself. Tr. 560.

Dr. Schosheim further testified that he considered Dr. Kasprzak's finding that Plaintiff had an MMPI-2 "faking bad profile" and factored that into his assessment of whether Plaintiff had deficits in adaptive functioning because, "even though her [IQ] scores show in the 68-70 range, maybe they could be higher because she tends to be exaggerating things. Maybe not doing her full ability on her testing." Tr. 575. He further opined that Plaintiff would only have "some mild" functioning limitations in a work environment "but nothing significant," and those impairments would be related to her pain problems, not her psychiatric problems. Tr. 563.

In her analysis, the ALJ noted that due to Dr. Schosheim's "expertise, his familiarity with the Social Security regulations and the consistency of his testimony with the longitudinal medical history, objective medical findings and other treating and examining opinions contained in the record," she gave this portion [5] of his

---

[5] As will be discussed in the following section, the ALJ gave little weight to another portion of Dr. Schosheim's testimony relating to Plaintiff's need to be off task for ten minutes every

testimony "significant weight." Tr. 526.   The Court finds that Dr. Schoseheim's opinion provides substantial evidence in support of the ALJ's finding that Plaintiff did not meet or equal listing 12.05.   *See e.g.*, 404.1527(e)(2)(iii) (ALJs may ask for and consider opinions from medical experts on the nature and severity of a claimant's impairment and on whether the impairment equals the requirements of any impairment listed in appendix 1); 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (greater weight generally is given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist).

Plaintiff does not specifically argue that the ALJ failed in giving Dr. Schoseheim's opinion significant weight.   *See*, generally Doc. 15.   Rather, Plaintiff argues that Dr. Schoseheim's testimony that there was no basis to infer that deficits in adaptive functioning existed prior to age twenty-two based on evidence after age twenty-two was contrary to evidence in the record and Eleventh Circuit precedent that requires application of a presumption that intellectual disability is a condition that remains constant throughout life.   Doc. 15 at 12 (citing *Hodges*, 276 F.3d at 1266).   Consequently, Plaintiff argues, the ALJ failed to apply a presumption that Plaintiff's cognitive condition was the same prior to age twenty-two and then rebut the presumption to find that Listing 12.05C was not met.   *Id.*   Plaintiff attempts, in a sense, to bypass her burden of proof with respect to the diagnostic description in the introductory paragraph of Listing 12.05C and proceed straight to the severity requirement of subparagraph C.   In this attempt, Plaintiff fails to recognize that in

---

one to two hours.

*Hodges*, the presumption applied because the plaintiff presented evidence in adaptive functioning after age twenty-two.   *Id.* at 1268.   In contrast, here, the expert and the ALJ could not infer deficits in adaptive functioning prior to age twenty-two based on evidence after age twenty-two because no such evidence existed.   Tr. 526, 557-58.

In *Hodges*, the plaintiff presented a valid IQ score that she obtained after age twenty-two and during the period she was applying for disability.   *Hodges*, 276 F.3d 1267.   The plaintiff also presented evidence of deficits in adaptive functioning, but she did not present any evidence that those deficits manifested themselves before she turned twenty-two.   *Id.* at 1267-68.   There, the ALJ found that the plaintiff failed to prove she met Listing 12.05C because she did not present evidence of deficits in adaptive functioning that manifested before she turned twenty-two.   *Id.*   In reviewing this issue of first impression, the Eleventh Circuit held that there is a rebuttable presumption that when a claimant presents an IQ score and deficits in adaptive functioning after the age of twenty-two, that those conditions manifested themselves before the age of twenty-two.   *Id.* at 1268-69.   The Court held,

> This circuit implicitly recognized that a claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment. *See Lowery v. Sullivan,* 979 F.2d 835, 838 (11th Cir.1992). *The claimant in Lowery presented evidence indicating a deficit in adaptive functioning before age twenty-two. Hodges presented similar evidence of mental disability, but the evidence related to her condition after age twenty-two.* The ALJ did not presume from such evidence that Hodges manifested a mental disability prior to age twenty-two. We hold that this failure to presume is error.

*Id.* at 1269 (emphasis added).   Thus, unlike in *Hodges*, Plaintiff failed to present deficits in adaptive functioning from either before or after she turned twenty-two.

Accordingly, the presumption does not apply.

The term "adaptive functioning" refers to an individual's progress in acquiring mental, academic, social and personal skills as compared to other unimpaired individuals of his or her same age.   Program Operations Manual System (POMS), DI 24515.056.D.2.; *see also O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015) ("Even though the SSA has not specifically defined 'deficits in adaptive functioning,' the Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning 'refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting.' DSM–IV–TR at 42.").

As the ALJ noted, Plaintiff was able to drive alone, go out in public on her own, shower independently, cook simple meals, wash dishes, sweep, mop, vacuum, change her bed with assistance, take the trash out weekly, shop, read four hours daily, and handle her personal finances.   Tr. 527; *see also* 479.   Plaintiff reported she could pay attention for "a while," follow written and spoken instructions, handle stress and changes in routine, and get along with authority figures.   Tr. 212-14. Plaintiff testified she has no problems with her memory.   Tr. 597.   She also testified that prior to her current state with her pain problem, she has been independent "all [her] life," and her family always depended on her whenever they needed help.   Tr. 604-05.   When the ALJ asked Plaintiff to clarify how her family depended on her, Plaintiff provided examples of helping support her sister and pay

her bills when her sister lost her job, going to her parents' house all the time to help her disabled mother, and going to the flea market. Tr. 605. Thus, Plaintiff's activities and testimony were inconsistent with deficits in adaptive functioning. *See, e.g., O'Neal*, 614 F. App'x at 459-60 (11th 2015) (holding the plaintiff's activities that included light yard work, driving, and independently performing all his activities of personal care and daily living supported the ALJ's implicit finding the plaintiff did not have sufficient deficits in adaptive functioning).

As further evidence substantiating the ALJ's decision, as the Commissioner points out, none of Plaintiff's treating or examining physicians noted any limitations relating to her intellectual capability. Doc. 22 at 11. Dr. Kazprzak noted Plaintiff was able to solve a simple hypothetical math problem and give an accurate meaning of a proverb. Tr. 1055. She had normal memory, below average reasoning, and normal attention and concentration; and she could spell correctly forward and backward, and count backward from twenty by serial threes. *Id.* Additionally, Plaintiff did not allege limitations due to intellectual functioning. Thus, even though Plaintiff was diagnosed with borderline intellectual functioning, this diagnosis alone was insufficient to meet the criteria of Listing 12.05C. *Wilkinson*, 847 F.2d at 662; *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897-98 (11th Cir. 2013).

Plaintiff further argues that Dr. Schosheim's testimony was not based on a full review of the record, and was thus inaccurate. Doc. 15 at 13-14. The Court is not persuaded by this argument. Although Plaintiff correctly points out that initially

Dr. Schosheim testified that Plaintiff did not have a valid IQ score of 60 to 70, the ALJ refreshed Dr. Schoseheim's recollection as to this aspect of Dr. Kazprzak's evaluation. Tr. 554-56. Aside from that refreshed recollection, Dr. Schoseheim subsequently testified in detail with various references to medical findings and exhibits that were provided to him. Tr. 555-78. Importantly, his testimony of whether Plaintiff's mental impairments met or equaled Listing 12.05C followed after the ALJ's refreshing Dr. Schoseheim's memory with respect to that one aspect of Dr. Kazprzak's evaluation. Tr. 554-78.

Plaintiff also argues that Dr. Schosheim lacked all of the medical records and could not provide an accurate opinion, as he admitted he had not seen any information pertaining to Plaintiff's post-traumatic headaches after an April 2008 head injury. Doc. 15 at 13-14. Plaintiff speculates that "at least some of the evidence might have changed his mind." Doc. 15 at 13-14. As the Commissioner notes, however, Plaintiff does not point to any medical evidence to support this assertion. To the contrary, imaging following Plaintiff's head injury appeared normal, and by August 2008, Plaintiff had 0% impairment rating. Tr. 251, 257. Moreover, the ALJ had available (and thoroughly discussed in her RFC assessment) all of the evidence relating to Plaintiff's head injury and was able to resolve conflicts in the evidence and assess the credibility of the witness, as she was required to do. *Lacina v. Commissioner*, 2015 WL 1453364, at *4 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)). Accordingly, the ALJ did not err in

finding that Plaintiff failed to meet or equal Listing 12.05C, she applied the proper legal standards in doing so, and her decision is supported by substantial evidence.

   B.   *Whether substantial evidence supports the ALJ's evaluation of the medical expert's opinion*

Plaintiff contends that the ALJ substituted her opinion for that of the medical expert.   Doc. 15 at 15-16.   Specifically, Plaintiff contends the ALJ erred in giving little weight to a portion of Dr. Schosheim's testimony wherein he opined that Plaintiff would need to be off task ten minutes every one to two hours.   *Id.* Accordingly, Plaintiff argues that the RFC is not supported by substantial evidence. *Id.*  The Commissioner responds that the ALJ properly granted less weight to Dr. Schoseheim's opinion that Plaintiff would be off task ten minutes every one to two hours because Dr. Schoseheim based this portion of the opinion on Plaintiff's assertions of physical pain, which the ALJ properly found to be not credible.   Doc. 22 at 15-20.   The Court finds that the ALJ did not err in weighing Dr. Schosheim's opinion with respect to Plaintiff's off-task limitations and that substantial evidence supports the ALJ's RFC determination.

The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC,

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(citing 20 C.F.R. § 404.1520(f), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford*, 363 F.3d at 1159-60.

During the hearing, Dr. Schosheim testified that because of Plaintiff's mood disorder secondary to the physical pain, it was more likely than not Plaintiff would require work that would allow her to be off task for ten minutes every one to two hours. Tr. 564-65. Dr. Schosheim testified that his opinion was "based on the chronic pain problems that [Plaintiff] seems to have." Tr. 565. The ALJ sought to clarify Dr. Schosheim's testimony, and the following exchange ensued:

> Q:   And when you opined that she has this limitation based on off task, *it's not the mental impairments*, but rather the aggravating affect [sic] of physical pain in conjunction that caused you to opine that? Is that correct?

A:     That's correct, Your Honor.

Q:     So you're assuming in giving that off task opinion that her complaints of pain are credible. Is that correct?

A:     Correct.

Tr. 565-66. (emphasis added).

The ALJ gave this portion of Dr. Schosheim's testimony little weight "because [Dr. Schosheim] stated this opinion was based solely on physical pain and not mental impairments." Tr. 526. She further explained:

> The physical medical evidence of record does not support the level of complained of physical pain. However, the undersigned has added an off task limitation in the residual functional capacity to account for the combination of physical symptoms and mental symptoms on concentration, persistence, or pace.

*Id.* As outlined in the RFC above, the ALJ found that Plaintiff would be limited to work that allows her to be off task 5% of the workday in addition to regularly scheduled breaks. Tr. 529.

Plaintiff argues that the ALJ erred in discounting the weight of Dr. Schosheim's opinion due to its being based solely on Plaintiff's physical pain. Doc. 15 at 15. First, Plaintiff contends, "[a]s a medical doctor, [Dr. Schosheim] is certainly qualified to evaluate how a Plaintiff's chronic pain could impact her ability to sustain focus and concentration from a mental standpoint and evaluate whether there is a credible basis for her pain." *Id.* at 16. Second, Plaintiff points to "a large body of research [that] has demonstrated that psychological factors influence all

forms of pain." *Id.*   Third, Plaintiff argues that the ALJ failed to cite to any evidence that is purportedly inconsistent with Dr. Schosheim's opinion.   *Id.* at 17.

Upon review of the testimony and the ALJ's decision, it is clear to the Court that the ALJ reduced the weight of Dr. Schosheim's opinion with respect to Plaintiff's off-task limitation because his opinion was based on the assumption that Plaintiff's assertions of physical pain were credible.   Tr. 526, 529-34, 564-66.   The ALJ, on the other hand, found Plaintiff's assertions regarding the intensity, persistence, and limiting effects of her symptoms, including her pain, "not entirely credible," and adjusted the off-task limitation accordingly.   Assessing credibility of witnesses and weighing the evidence is within the province of the ALJ.[6]   *Lacina*, 2015 WL 1453364, at *4 (citing *Grant*, 445 F.2d at 656).

When assessing the credibility of subjective complaints, such as pain, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson*, 284 F.3d at 1225-26; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate

---

[6] Plaintiff does not challenge the ALJ's credibility determination, and thus has waived this issue. *See* note 1, *supra*.   In any event, for the reasons stated in this opinion, substantial evidence supports the ALJ's credibility determination.

the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work.  *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.  The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.  *See* 20 C.F.R. § 404.1529(c).  "If the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, as noted, the ALJ considered Plaintiff's statements regarding the intensity and persistence of the symptoms to determine how the symptoms limit Plaintiff's capacity for work.  Tr. 532.  After thoroughly discussing the medical evidence, the ALJ proceeded to the credibility determination.  Tr. 529-32.  The ALJ found that Plaintiff's "responses during psychological/psychiatric testing resulted in an invalid profile, raising the possibility that [Plaintiff] was not putting forth maximal effort or was not fully cooperating, which diminishes her overall credibility."  Tr. 532.  The ALJ summarized her thorough discussion of the relevant record evidence and further elaborated on her credibility determination, as follows:

> The medical records in evidence reflect [Plaintiff] underwent treatment to some degree for her severe impairments. However, the record lacks the type of clinical and laboratory abnormalities one would expect to find of a disabled individual and [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. In fact, many of the [Plaintiff's] examinations were within

normal limits or showed only slight limitations. On exam, she had only slight limitations of occasional tenderness or reduced range of motion however her exams did not generally evidence deficits of [Plaintiff's] speech, strength, dexterity, gait, or coordination. Straight leg raising was negative. She did not require an ambulation device. She has not been treated by any specialist and no doctor has recommended surgical intervention for any of her alleged impairments. [Plaintiff] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [Plaintiff's] favor, but the medical records reveal that the medications have been relatively effective in controlling [Plaintiff's] symptoms. Treating notes indicate that her medications controlled her symptoms and improved her daily activities. [Plaintiff] reportedly was satisfied and doing well, and there were no side effects of medication. In fact, she reported walking 1/2 a mile daily. She reported a wide range of activities of daily living to several providers. She has remained fully functional from a mental and physical perspective. However, the undersigned has accounted for [Plaintiff's] allegations and complaints in the above residual functional capacity due to her combination of physical pain complaints, borderline intellectual functioning, and limited social functioning.

Tr. 532.

The record, thoroughly discussed in the ALJ's decision and adopted herein, reveals no reversible error in the ALJ's assessment of Plaintiff's credibility concerning the intensity and persistence of Plaintiff's symptoms and their limiting effects on Plaintiff's ability to work. "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court," and the Court declines to do so here. *Foote*, 67 F.3d at 1562. Moreover, the ALJ complied with her duty and weighed numerous medical opinions, including treating physicians, consultative examiners, and state agency medical experts and based her findings according to the weight afforded to these opinions[7] and all of the relevant

---

[7] Plaintiffs inserts a single sentence that "Dr. Schosheim's opinion is consistent with the GAF score of 48 assessed by Dr. Kasprzak, indicating Plaintiff unable to work;" however, the ALJ accorded the GAF score little weight and provided sufficient justification for doing so. Doc.

evidence in the record.   Tr. 533-34.   *See* 20 C.F.R. §§ 404.1527(c),(e), 416.927(c),(e); 404.1545(a).   The ALJ sufficiently articulated her findings to allow this Court a meaningful review of whether the conclusions she reached are rational.   *Winschel*, 631 F.3d at 1179 (citations omitted).   Accordingly, the Court cannot conclude that the ALJ substituted her opinion for that of the medical expert.   The Court concludes, instead, that substantial evidence supports the ALJ's RFC determination.

## V.   Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The decision of the Commissioner is **AFFIRMED**.

2.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 26th day of September, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies to: Counsel of record

---

15 at 17; Tr. 534.   Plaintiff has not challenged the weight given to the GAF score.   *See*, generally, Doc. 15.   Accordingly, the Court will not address this issue. *See* note 1, *supra*.